[Cite as *Beck v. Beck*, 2017-Ohio-1106.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STEVEN J. BECK, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-054** |
| JOY L. BECK, | : | |
| Defendant-Appellant. | : | |

Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 2012 DR 000349.

Judgment: Affirmed.

*Gary D. Zeid,* Sternberg & Zeid Co., L.P.A., 7547 Mentor Avenue, #301, Mentor, OH 44060 (For Plaintiff-Appellee).

*Joy L. Beck,* pro se, 20230 Pienza Lane, Porter Ranch, CA 91326 (Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Joy L. Beck, pro se ("wife"), appeals the divorce decree of the Lake County Court of Common Pleas, Domestic Relations Division. At issue is whether the trial court abused its discretion or erred in making certain rulings in favor of appellee, Steven J. Beck ("husband"). For the reasons that follow, we affirm.

{¶2} The parties were married in 1990. In 1996, they had twin daughters, V.B and S.B. They were 18 years old on August 18, 2014, and graduated from high school in June 2015.

{¶3} Husband filed his complaint for divorce on May 30, 2012. Wife filed her answer and counterclaim for divorce. Husband filed an answer to the counterclaim. Wife also filed a motion for temporary spousal and child support. At the time, the children were 15 years old.

{¶4} The case was protracted due to wife's geographical distance from the court because, in early 2012, she moved to California with her daughters. The case was complicated by the multitude of motions filed by the parties, which necessitated multiple trial dates. Further, wife was represented by five different attorneys during the course of the proceedings. At trial, both parties were represented by counsel.

{¶5} On August 23, 2012, the magistrate issued an order designating both parents as temporary residential parents and establishing temporary child and spousal support. The parties filed objections to the temporary support order, which the magistrate passed for trial.

{¶6} Subsequently, husband filed an amended complaint. Wife filed an amended counterclaim and request for a distributive award. She also filed a motion to extend husband's child support obligation for V.B., alleging she was disabled.

{¶7} By the time of trial, the parties had resolved several contested issues by stipulation, including custody of the children, the amount of support, and the division of certain marital assets. The issues that remained unresolved included the starting date

of temporary support, the division of the children's school-related expenses, and wife's request for a distributive award.

**{¶8}** The trial was held by the magistrate on October 28, 2013; October 30, 2013; November 15, 2013; and December 23, 2013. After the trial, wife continued to file pro se motions, such as multiple motions to show cause against husband and a motion for Civ.R. 11 sanctions against husband's counsel, each of which was denied. The parties filed their written closing arguments in November 2014. The magistrate filed her 67-page decision on the trial and pending motions on June 26, 2015. Mother filed objections to the magistrate's decision, which the court denied on February 25, 2016.

**{¶9}** On April 29, 2016, the trial court issued the divorce decree resolving all remaining issues. Wife appeals the divorce decree, asserting seven assignments of error. For her first, she alleges:

**{¶10}** "The trial court abused its discretion in designating the payment process for facials when it was already established to be medically necessary."

**{¶11}** Before addressing this issue, we note that wife has failed to cite the record even once to support any of the alleged facts on which she relies to support this assigned error, in violation of App.R. 16(A)(7). It is not the role of this court to comb the record in search of evidence to support an appellant's argument. *Id.* Failure to comply with this rule is potentially fatal to the argument. *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996). For this reason alone, this assignment of error lacks merit.

**{¶12}** In any event, it is unclear what wife means when she says that it was "already established" that the monthly facials S.B. receives for her acne were medically necessary because the court did not make such ruling.

3

{¶13} At trial, husband argued that the medical insurer should determine if the treatment was medically necessary and, if it was, insurance would cover the cost. He argued that if the insurer determined the procedure was not medically necessary, he should not be required to share the cost of the bill.

{¶14} The magistrate stated in her June 26, 2015 decision following the trial that the issue was difficult because, while the facials involved here are more intensive than a typical cosmetic facial, the insurance carrier had determined the procedure was not medically necessary. In an effort to reach a fair compromise, the trial court in the divorce decree concluded that "so long as [S.B.'s] *medical providers* verify their determination, in writing, that her facials are medically necessary, [husband] shall share in the responsibility for their payment." (Emphasis added.) The court also set forth the percentage of each party's obligation.

{¶15} In support of her assigned error, wife argues husband should be required to share the cost of these procedures without wife being required to present monthly verification from S.B.'s doctor as to their medical necessity. However, contrary to wife's argument, while she *is* required to present proof of the continuing medical necessity for the procedures, she is *not* required to present such verification each time S.B. has one. The order did not specify the frequency of such verification; only that verification of medical necessity must be provided before husband is required to share the expense. Thus, e.g., wife could provide a doctor's verification monthly, every six months, or on some other schedule, as long as verification is provided.

**{¶16}** Upon review of the record, we cannot say the trial court abused its discretion in determining the procedure by which the costs associated with these treatments would be apportioned.

**{¶17}** For her second assignment of error, wife alleges:

**{¶18}** "The trial court erred in establishing August 23, 2012 for temporary support is contrary to the manifest weight of the evidence presented and ignores the case law on the matter of status quo." (Sic throughout.)

**{¶19}** "'There is no set formula under R.C. 3105.18 to guide courts to arrive at an appropriate amount of temporary support. The only explicit limitation in R.C. 3105.18(B) is that the award must be "reasonable." Courts are given discretion in deciding what is reasonable support because that determination is dependent on the unique facts and circumstances of each case.'" *Keating v. Keating*, 8th Dist. Cuyahoga No. 90611, 2008-Ohio-5345, ¶35, quoting *Cangemi v. Cangemi*, 8th Dist. Cuyahoga No. 86670, 2006-Ohio-2879, ¶15. Thus, this court will not reverse such determination absent a finding that the trial court abused its discretion. *Id.*

**{¶20}** On August 23, 2012, the magistrate ordered child support and spousal support would be retroactive to July 1, 2012. Both parties filed objections to this order. Thereafter, the magistrate, in her June 26, 2015 decision following the trial, ordered temporary support would not be retroactive, but, rather, would be effective August 23, 2012. Wife objected to this finding, and the trial court overruled the objection. Subsequently, the trial court addressed this issue in the divorce decree and issued the identical order as the magistrate. Wife argues the temporary support order should have

5

been retroactive to June 16, 2012. Thus, she argues she was entitled to two more months of temporary support from June to August, 2012.

{¶21} Wife argues that on June 16, 2012, husband cut off all financial assistance, including credit cards, checks, and cash, and she was forced to live on loans given to her by her mother. To support her argument, wife lists the expenses she allegedly paid prior to August 23, 2012 with those loans; however, she fails to reference the record in support of any of these alleged payments.

{¶22} The magistrate, in her June 26, 2015 decision denying retroactive support, found wife's testimony on this issue was not credible, as follows:

{¶23} Wife's statements do not indicate payments made after her mother allegedly gave her money to pay her bills. The amounts the wife testified to above are in the neighborhood of $16,000. Wife presented no reliable testimony and no evidence whatsoever from her mother, that these supposed amounts were loans to the wife. Finally, the wife's use of [marital] credit cards belie her previous statement the husband cut off her access to family funds as of June 16, 2012.

{¶24} Thereafter, the trial court overruled wife's objections to the magistrate's decision in a February 25, 2016 judgment, in which the court stated:

{¶25} [Wife] is correct the transcript shows [husband] closed the Discover card in June 2012. Nonetheless, both parties' testimony shows the Discover card was used almost exclusively during the marriage by [wife]. The evidence also shows after he closed the account, [husband] paid the card balance of approximately $10,000 charged by [wife]. * * *

{¶26} [Wife] argues she chose not to reside in the marital residence. Said testimony * * * is not a legal basis for an increased spousal support. The evidence shows, when analyzed in totality, [wife] left Ohio with the parties' two daughters without any apparent concern as to finances. * * * [Wife] left Ohio even before the Magistrate issued her order as to temporary child and spousal support on August 23, 2012. [Wife's] argument that [husband] was the sole financial provider during the marriage is correct. After the separation, [wife]

6

resided in the marital residence with the girls for a few months until they left for California. After [husband] left the marital residence in March, [2012,] he lived at Value Place hotel in Avon at his expense. He continued to make the [rental] payments on the marital residence until the lease's end in September 2012, along with the lease payments for [wife's] Lexus.

**{¶27}** Subsequently, the trial court in the divorce decree found that "as [husband] was paying household expenses, all the family's expenses, including [wife's] car payment, the temporary support order herein shall not be retroactive. The temporary child and spousal support orders shall commence on August 23, 2012 * * *."

**{¶28}** Wife argues the trial court erred in making this finding because, according to her, there is no proof that husband paid all of the family's expenses. However, the court relied on husband's Exhibit 14, which was a packet of the family's bills paid by husband. The magistrate stated in her June 26, 2015 decision that this exhibit showed the "considerable family expenses the husband paid out-of-pocket during this time period. He paid for the Ohio residence (as the wife and children were temporarily in California as had been their past practice) as well as credit card bills, and the children's medical expenses in an approximate amount of $36,000 for a five-month period: mid-June through mid-November, 2012. Husband thus paid approximately $7,000 on the family's expenses, many of which were those for the wife and children, each month. These expenditures were in addition to the support he, in effect, began paying in mid-August."

**{¶29}** Significantly, wife concedes husband paid many of the family's expenses between June and August 2012, including rent for the marital residence and the children's medical bills.

7

{¶30} Since the trial court based its decision on evidence in the record, its decision that the award of temporary support would not be retroactive was not an abuse of discretion.

{¶31} For her third assignment of error, wife contends:

{¶32} "The trial court erred in denying wife's request for a distributive award contrary to the manifest weight of the evidence."

{¶33} This court recently outlined the law with respect to a spouse's entitlement to a distributive award in *Calkins v. Calkins*, 11th Dist. Geauga Nos. 2014-G-3203 and 2014-G-3218, 2016-Ohio-1297, as follows:

{¶34} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4). "[W]hile R.C. 3105.171(E)(3) does not set forth an exclusive listing of acts constituting financial misconduct, those acts that are listed * * * all contain some element requiring wrongful scienter. Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." *Hammond v. Brown*, 8th Dist. Cuyahoga No. 67268, 1995 WL 546903, *3 (Sept. 14, 1995) * * *. *The burden of proving financial misconduct is on the complaining party. Smith v. Emery–Smith*, 190 Ohio App.3d 335, 2010-Ohio-5302, ¶50 (11th Dist.).

{¶35} * * *

{¶36} * * * While a trial court enjoys broad *discretion* in deciding whether to compensate one spouse for the financial misconduct of the other, the *initial finding of financial misconduct must be supported by the manifest weight of the evidence. Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-211, ¶77; *Emery–Smith, supra*, at ¶50. Under this standard, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Smith v. Smith*, 11th Dist. Geauga No.

8

2013–G–3126, 2013-Ohio-4101, ¶42. *Calkins, supra*, at ¶15-17. (Emphasis added.)

**{¶37}** Wife argues husband was hiding marital assets. However, the magistrate in her June 26, 2015 decision found that wife failed to prove husband engaged in financial misconduct and denied wife's request for a distributive award. In illustrating this failure of proof, the magistrate stated that, during wife's cross-examination of husband, he "was * * * shown a series of irrelevant and unhelpful exhibits. These are included as examples of the wife's inability to present cogent documents and/or proof of her allegations of the husband's alleged misuse of marital funds * * *."

**{¶38}** At trial, wife presented the testimony of James Ibrahim, a computer expert, who reviewed husband's computer. Wife attempted to elicit testimony that husband removed financial records from his computer, thus proving his misconduct. However, Mr. Ibrahim testified that one of wife's former attorneys had retained him to determine if any information had been erased from husband's hard drive. Mr. Ibrahim said he found nothing of substance that was deleted. Thus, he said he was unable to find anything akin to what wife's former attorney was looking for.

**{¶39}** In the magistrate's June 26, 2015 decision, the magistrate stated that "[s]umming up the wife's Closing Argument will be difficult. Her argument is very theatrical and quite disappointing in that it is not thoughtful, is filled with unsound reasoning, and is occupied with innuendo lacking factual foundation as to her assertions, especially as to the husband's misuse of funds * * *." Further, the magistrate said she finds "this argument [that] the husband secreted away marital funds, to be unpersuasive. A review of these exhibits demonstrates nothing of the kind; these are hand-written notes, not documented withdrawals from marital funds.

9

{¶40} In denying wife's objection to this finding, the trial court in its February 25, 2016 judgment stated that wife makes allegations of suspicious financial activity, but she presented no "credible evidence to substantiate her assertions."

{¶41} In the divorce decree, the trial court found that wife failed to prove husband concealed marital assets and, thus, she was not entitled to a distributive award.

{¶42} The trial court's finding that wife failed to prove husband's alleged financial misconduct is supported by the record. In ruling in favor of husband, the trial court obviously found his testimony was more credible than wife's. As the trier of fact, the court was entitled to make this call, and we discern nothing in the record from which we could reasonably conclude the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed. We therefore hold the trial court did not abuse its discretion in denying wife's request for a distributive award.

{¶43} For her fourth assigned error, wife alleges:

{¶44} "The trial court erred in determining the division of school expenses is contrary to the manifest weight of the evidence presented and was an abuse of discretion by this court." (Sic throughout.)

{¶45} The November 8, 2013 magistrate's order set forth the parties' stipulation that "[e]ach party shall pay one-half of the high school tuition and related school expenses for the children to attend their current private high school." Wife interpreted this to mean that husband should pay one-half of all school-related expenses, including

10

extra-curricular items, such as proms, prom dress alterations, dance tickets, homecomings, and hair for homecoming.

**{¶46}** However, in the magistrate's June 26, 2015 decision, the magistrate found that "tuition and school-related expenses means that the husband would [share] the *mandatory* expenses related to school, such as tuition and required expenses." (Emphasis added.) A trial court has inherent authority to interpret its own prior orders and judgments. *Knapp v. Knapp,* 4th Dist. Lawrence No. 05CA2, 2005-Ohio-7105, ¶40.

**{¶47}** The magistrate noted that wife's request for reimbursement for items such as a mechanical pencil for an art project would actually be "double-dipping," as the husband had already paid child support toward such items. The magistrate stated that, based on the evidence presented, items like tuition, tutoring, uniform expenses, field trips, and books are mandatory school-related expenses and thus subject to division, but extra-curricular activities and items such as retreats, proms, homecomings, dances, yearbooks, and class rings are not. Applying this test, the magistrate found that several specific items totaling $2,787 were mandatory and thus subject to division. As a result, the trial court in the divorce decree found that husband was responsible for $1,393 for his share of the mandatory school-related expenses.

**{¶48}** The trial court's findings regarding those items that were mandatory school-related costs were supported by competent, credible evidence, and the court's division of the cost of such expenses was not an abuse of discretion.

**{¶49}** Wife alleges the following for her fifth assignment of error:

**{¶50}** "The trial court erred in denying wife reimbursement for Christmas travel is contrary to the manifest weight of the evidence presented." (Sic.)

11

{¶51} The November 8, 2013 magistrate's order provided: "In 2013 the children will be in Ohio during Christmas vacation and the Husband shall have parenting time for one week during said vacation." Wife argues that because husband did not see the children during that trip, she was entitled to reimbursement for the cost of flying the children to Ohio.

{¶52} Husband told wife he could not visit with the children during the Christmas holiday because his brother died a few weeks earlier and he had to spend the holiday with his mother in Michigan. Wife testified that she would have left the girls in California when she returned to Ohio for trial in December 2013, and that the only reason she brought them to Ohio was because of the visitation order. However, the magistrate found wife planned to bring them to Ohio regardless of that order. In denying wife's request for reimbursement, the magistrate stated in her June 26, 2015 decision:

{¶53} Wife's testimony she would not have brought the girls [to Ohio] for Christmas vacation and that they only spent time with two friends, did not go * * * to parties or events and * * * only spent time with their maternal grandmother, was all unconvincing. She changed her testimony related to this visit by first stating they were going to stay with a family friend in California and then stating she was going to fly her mother out [to California] to stay with the children. This inconsistency in her testimony is particularly telling.

{¶54} In overruling wife's objection to this finding on February 25, 2016, the trial court stated:

{¶55} The crux of this [issue] is the November 8, 2013 Magistrate's order which reads as follows * * * "In 2013 the children will be in Ohio during Christmas vacation and the Husband shall have parenting time for one week during said vacation." Said order resulted from the stipulations of the parties and their attorneys on October 29 and October 30, 2012. The language read upon the record in the transcript of the October 30th hearing shows a trip to Ohio for the holidays had already been planned. * * * [Wife] is looking to twist the October 30, 2013 stipulations to help herself financially.

12

{¶56} Finally, the trial court in the divorce decree likewise denied wife's request for reimbursement.

{¶57} The trial court's judgment denying wife's request for reimbursement was based on competent, credible evidence and was not an abuse of discretion.

{¶58} For her sixth assignment of error, wife alleges:

{¶59} "The trial court erred in not finding the minor child a dependant under the Castle Doctrine contrary to the manifest weight of the evidence presented."

{¶60} In *Castle v. Castle*, 15 Ohio St.3d 279 (1984), the Supreme Court of Ohio stated that ordinarily, in the absence of a statutory provision to the contrary, the duty of the parent to support a child ends when the child reaches the age of majority. *Id.* at 281. However, the Court further said that the "duty imposed on parents to support their minor children may be found by a court of domestic relations * * * to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." *Id.*

{¶61} Further, R.C. 3119.86(A)(1)(a) provides that the duty to support a child shall continue beyond the child's eighteenth birthday where the child is mentally or physically disabled *and* is incapable of supporting or maintaining himself or herself.

{¶62} Wife argues the trial court erred in denying her request that V.B.'s child support continue past her emancipation in light of wife's testimony that V.B. will not be able to support herself later in life as she suffers from anxiety and OCD. However, the magistrate found that wife failed to present any "reliable medical testimony" to support her opinion. The magistrate noted the only medical "evidence" wife presented was an unsworn, one-paragraph letter prepared by V.B.'s pediatrician, in which she said it was

13

her opinion that, as of the date of her letter, due to V.B.'s frustration over the parties' divorce, she could not hold a job. However, the doctor said she "[could] not comment on [V.B.'s] ability to hold a job in the future or after she turns eighteen." The magistrate noted the letter had little weight since "husband had no opportunity to cross-examine" it.

{¶63} The magistrate also found wife's testimony that V.B. is failing classes and has missed school due to anxiety lacked credibility in light of wife's failure to provide any school records in support, although, the magistrate noted, such records were readily available from the girls' school. Further, the magistrate found that wife was not truthful when pushed to state V.B.'s grade point average. At first, she said she did not know her GPA because the school computers were "frozen." Then, after being asked several times, wife finally admitted V.B. had a 3.4 GPA last year.

{¶64} Moreover, wife admitted that V.B. enjoys school; that she is able to get herself to her classes (which are located in several different buildings); that she is succeeding in school; that she participates in extra-curricular activities (including drama, dance, and guitar); that she was planning to go to college: that she has no physical disabilities; and that she is able to care for her own hygiene and make-up and to make meals for herself. The magistrate found wife's testimony that V.B. will not be able to support herself in the future was not even supported by the pediatrician's letter. The magistrate also found that, based on wife's testimony, V.B. is not on medications that would indicate she has any disability that would preclude her from working. Thus, the trial court found wife's evidence was "woefully inadequate" to prove V.B. is a *Castle* child.

{¶65} Wife also argues that, although she moved for an in-camera interview of the girls and the magistrate granted the motion, the girls were not interviewed. However, the motion was filed when custody was still being litigated. The motion said it was made so the girls could state their "wishes and concerns." However, once the parties settled custody, the interview request became moot. This would explain why, during the four-day trial, wife's counsel never asked for an in-camera interview. In any event, wife could have had the girls testify if that was her wish, particularly since they were 18 years old at the time of trial.

{¶66} Based on our review of the record, the trial court's findings were supported by competent, credible evidence and the court did not err in denying mother's request.

{¶67} For her seventh and last assigned error, wife contends:

{¶68} "The trial court erred in denying wife's motion to clarify contrary to the manifest weight of the evidence and contrary to the agreement and stipulations reached by the parties."

{¶69} The magistrate's November 8, 2013 order set forth the parties' stipulation that "[e]ach party shall claim one child as a dependent for income tax purposes unless the tax deduction used by Husband results in there being a benefit of less than 42% of the normal tax benefit, in which case the Wife shall claim both children as a dependent for income tax purposes for that year." Wife argues the stipulation is not valid because the parties themselves did not agree to the stipulation on the record.

{¶70} It is undisputed that wife did not timely, i.e., within 10 days, move to set aside the magistrate's order, as required by Civ.R. 53(D)(2)(b). In fact, wife did not raise this issue until she filed her motion to clarify on October 14, 2014, nearly one year

after the magistrate's November 8, 2013 order.  In any event, even if wife had timely filed a motion to set aside the magistrate's order, such motion would have lacked merit. The magistrate, in her June 26, 2015 decision denying wife's motion to clarify, stated that, although the parties did not agree to the stipulation on the record, the stipulation was agreed to by the parties' attorneys and was a valid stipulation.  The magistrate noted that wife was present while the stipulations were being negotiated and agreed each party should receive one child for tax dependency purposes.  The magistrate said this is simply a case where one party wants to change her mind about a stipulation to which she previously agreed.

{¶71} We therefore hold the trial court did not err in finding wife agreed to the subject stipulation and the court did not abuse its discretion in not permitting wife to change her mind.

{¶72} For the reasons stated in this opinion, the assignments of error are overruled.  It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.

TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.