[Cite as *J.R. v. K.R.*, 2019-Ohio-1765.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

J.R., :

    Plaintiff-Appellant, :

                                      No. 106978

v. :

K.R., :

    Defendant-Appellee. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 9, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Division of Domestic Relations
Case No. DR-16-365030

---

### *Appearances:*

Law Offices of Joyce E. Barrett, Joyce E. Barrett and James P. Reddy, *for appellant.*

Zashin & Rich Co. L.P.A., Amy M. Keating and Andrew A. Zashin, *for appellee.*

ANITA LASTER MAYS, J.:

{¶ 1} Plaintiff-appellant J.R., husband, appeals an adverse determination to the outcome he sought in the Cuyahoga County Court of Common Pleas, Division

of Domestic Relations, relating to division of property, child support, and award of attorney fees. We affirm the trial court's decision.

## I. BACKGROUND AND FACTS

{¶ 2} Appellant and appellee married on July 8, 2011. Two children were born as issue of the marriage. G. was born in 2013 and J. was born in 2015. Appellant and appellee began living separate and apart on December 10, 2016. Appellant filed a complaint for divorce on December 20, 2016. Appellee filed her answer and counterclaim for divorce on January 12, 2017. On February 10, 2017, the parties entered into an interim temporary parenting agreement that designated the party in possession of the children during their agreed parenting time as the legal custodian and residential parent.

{¶ 3} A guardian ad litem ("GAL") was appointed for the children and experts were retained to conduct psychological and custodial evaluations on the parties and the children. On May 16, 2017, the trial court granted appellee's March 3, 2017 motion for support and ordered appellant to pay $3,600 per month for temporary spousal support, $4,567.03 for temporary child support and $200 toward temporary support arrearage totaling $8,367.03 per month. Appellant challenged the temporary support order. Appellee filed a motion to show cause for underpayment of the support amount on September 15, 2017.

{¶ 4} On October 5, 2017, in a comprehensive decision, the magistrate concluded that, based on the evidence submitted and the allowance in favor of both parties for certain expenses, the temporary support order would stand. Appellee

filed a second motion to show cause for failure to pay temporary support on January 12, 2018.

{¶ 5} The October 16, 2017 through October 20, 2017 trial dates resulted in a negotiated shared parenting plan ("SPP") approved by the trial court. Trial on the financial issues was held on December 5-7, and 11, 2017. Appellee retained experts to conduct an income analysis for appellant's practice and a passive growth analysis for the separate property portion of appellee's retirement account.

{¶ 6} On January 8, 2018, appellee filed written objections to appellant's trial exhibits, but appellant did not file objections. By stipulation of the parties, the claims for attorney fees were submitted in written closing arguments. On February 23, 2018, the trial court issued a judgment entry of divorce. Appellant timely appealed on March 26, 2018.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Appellant proffers four assignments of error:

I. The trial court erred and abused its discretion in ordering the appellant to pay to the appellee monthly child support in the sum of $7,921.21 ($3,960.60 monthly per child) plus $250 per month as a temporary support arrearage, and finding that appellant's annual income was $478,735.

II. The trial court erred and abused its discretion in its division of property with respect to appellant's retirement benefits; funds borrowed from appellant's mother and then paid back; and failure to equitably divide the cash surrender value in the parties' respective life insurance policies.

III. The trial court erred and abused its discretion in ordering appellant to pay $30,000 toward appellee's attorney fees.

IV.  The trial court erred and abused its discretion in determining that there was an arrearage in the temporary support order and in failing to modify the temporary support order retroactive to March 3, 2017.

## III. DISCUSSION

### A. Standard of Review

{¶ 8}  A trial court's judgment in determining matters of divorce is reviewed for an abuse of discretion. *Rodgers v. Rodgers*, 8th Dist. Cuyahoga No. 105095, 2017-Ohio-7886, ¶ 11, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989); *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130, 541 N.E.2d 597 (1989).  An abuse of discretion standard "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Id.*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  "Thus, our standard of review is deferential, and we may not simply substitute our judgment for that of the trial court." *Id.*

#### 1.  Child Support[1]

{¶ 9}  Appellant, a plastic surgeon, conducts business as Raj Plastic Surgery L.L.C. and also derives income from consulting services as well as on-call hand trauma assignments.  Appellee, also a physician, is the Associate Program Director of the Cleveland Clinic Medical Residency Program.  Appellee has maintained health

---

[1] Appellant challenges the temporary child support arrearage in both the first and fourth assigned errors.  We will address the issue in our analysis of the fourth assignment of error.

insurance coverage for the entire family and, post-divorce, is required to maintain coverage for the children. Each party's annual income exceeds $150,000 per year.

{¶ 10} Appellant takes issue with the trial court's award of child support to appellee. Appellant argues that the trial court improperly extrapolated the final child support figure utilizing the predecessor statute to R.C. 3119.04 and failed to properly compute the basic combined child support obligation. Appellant offers that the SPP's grant of equal parenting time, coupled with the fact that each parent earns a substantial income, means that there is no need for "money to exchange hands" so neither party should pay child support.

{¶ 11} Former R.C. 3119.04(B) governs child support calculations where the combined parental income exceeds $150,000:[2]

> (B) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

---

[2] The former version of the statute was effective until March 28, 2019. R.C. 3119.04 was substantially amended effective March 28, 2019, 2018 H.B. 366, and adopted new child support calculations and worksheets.

{¶ 12} The statute requires that the trial court:

> (1) set the child support amount based on the qualitative needs and standard of living of the children and parents, (2) ensure that the amount set is not less than the $150,000-equivalent, unless awarding the $150,000-equivalent would be "unjust or inappropriate and would not be in the best interest of the child," and (3) if it decides the $150,000-equivalent is unjust or inappropriate (and awards less), then the court must journalize the justification for that decision.

*Abbey v. Peavy*, 8th Dist. Cuyahoga No. 100893, 2014-Ohio-3921, ¶ 24, citing

*Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶ 31, citing

*Zeitler v. Zeitler*, 9th Dist. Summit No. 04CA008444, 2004-Ohio-5551, ¶ 8.

{¶ 13} We reject appellant's argument that the extrapolation method became obsolete when R.C. 3119.04(B) was enacted.

> Nothing in the new version of the statute, however, prohibits the court from using this method to determine the amount of support due in high income cases; it merely no longer mandates that the court use this method. Moreover, the statute does not require any explanation of its decision unless it awards less than the amount awarded for combined incomes of $ 150,000.

*Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 56. "The trial court would not have erred, therefore, if it used the extrapolation method to determine the amount of child support due." *Id*.

{¶ 14} The trial court has broad discretion under R.C. 3109.04(B) in determining the amount of child support where the combined income exceeds $150,000.

> R.C. 3119.04(B) requires the court to determine the amount of child support on a "case-by-case" basis, taking into account the "needs and the standard of living of the children who are the subject of the child support order and of the parents." Importantly, R.C. 3119.04(B) "neither contains nor references any factors to guide the court's

determination in setting the amount of child support," *Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶ 31, so the determination of how much child support an obligor must pay is left "entirely to the court's discretion." *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 54.

*Cross v. Cross*, 2015-Ohio-5255, 54 N.E.3d 756, ¶ 46 (8th Dist.).

{¶ 15} A trial court considers the "needs and the standard of living of the child[ren]" and those "of the parents as well." *Schwartz v. O'Brien*, 8th Dist. Cuyahoga No. 100930, 2014-Ohio-4813, ¶ 4. "The parties' children are entitled to enjoy the standard of living they would have enjoyed had the marriage continued." *Id.*

{¶ 16} Appellant stipulated to the qualification of John D. Davis, appellee's expert witness. Davis is certified by: (1) the American Institute of Certified Public Accountants as a certified public accountant accredited in business valuation; (2) the National Association of Certified Valuation Analysts as a certified valuation analyst; and (3) the Association of Certified Fraud Examiners as a certified fraud examiner.

{¶ 17} Davis conducted a review of appellant's medical practice and performed an income analysis. Davis testified that appellant's income for 2017 was $478,735. Appellee's income for 2017 was $201,000. Appellant's income for 2014, 2015, and 2016 also exceeded the income of appellee.

{¶ 18} The trial court also heard testimony from appellant's office manager, Ms. Marx. Marx testified to a reduced revenue stream for appellant's business in 2017, including a reduction in plastic surgery clientele that appellant attributed to

reports of a domestic violence incident between the parties. Davis countered that the 2017 data provided by appellant was an incommensurate comparison to prior years and Davis identified inconsistences and questionable entries. The testimony also revealed that appellant's involvement with the business relocation and divorce reduced his available time for business appointments.

{¶ 19} One of the children was born with a medical condition that requires ongoing treatment and therapy from multiple medical specialists, and the other child has intestinal issues and allergies. Appellee, who carries the medical insurance, also pays for the children's medical expenses that are not covered by insurance.

{¶ 20} The parties hired a nanny in April 2014 due to their professional demands and appellee has paid the nanny's salary since the parties began living separately. The nanny has been paid weekly in cash. Appellant takes issue with the failure of appellee to provide documentation of the payments to the nanny. Appellee testified that the nanny received an hourly rate plus mileage, averaged 45 to 60 hours per week, was paid from the joint account of the parties on Fridays, and that the monthly cost was approximately $5,500. Appellant disavows knowledge of how much the nanny was paid but admitted that someone is watching the children while appellee works.

{¶ 21} The older child attends a private preschool that the younger child is also expected to attend if his medical needs can be accommodated. Appellant agreed as part of the SPP to pay for preschool and for a private school education for both

children. The SPP specifically provides that the tuition payments are not to be considered for purposes of child support. "The parties acknowledge and agree that Father's obligation [to pay tuition] is separate and apart from any child support obligation or other expenses for the children and shall not be a basis for deviation or reduction." SPP, p. 10, ¶ 9.

{¶ 22} The children are accustomed to a high standard of living and the parents reside in homes in affluent suburbs. They participate in extracurricular activities and enjoy the benefits of their parents' membership at a private country club.

{¶ 23} The trial court was not required to explain its decision under R.C. 3119.04(B) where the parental income exceeds $150,000. "[T]he trial court is free to determine any amount above the guideline maximum without providing any reasons. *Pruitt v. Pruitt*, 8th Dist. Cuyahoga No. 84335, 2005-Ohio-4424, ¶ 44. Appellant did not seek to have the trial court issue findings of fact pursuant to Civ.R. 52 so we presume proper application of the law and affirm where there is some evidence supporting the underlying issue. *Guertin v. Guertin*, 10th Dist. Franklin No. 06AP-1101, 2007-Ohio-2008, ¶ 6. *See also Wilk v. Wilk*, 8th Dist. Cuyahoga No. 96347, 2011-Ohio-5273, ¶ 10 ("absent a Civ.R. 52 motion, a trial court need not make specific findings correlating to R.C. 3109.04(F) [best interest of the child custody determinations] in the judgment entry" and an "appellate court will presume regularity in the trial.")

{¶ 24} We do not find that the trial court abused its broad discretion by awarding child support in the amount of $3,960.60 monthly per child and finding that appellant's annual income was $478,735.

## 2. Division of Property

{¶ 25} Appellant protests the trial court's allocation of certain property. R.C. 3105.171(B) provides:

> (B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest.

{¶ 26} Pursuant to R.C. 3105.171(C)(1), in reaching a determination on marital assets and liabilities, a trial court considers the factors listed in R.C. 3105.171(F) and any other factors deemed relevant by the court to achieve an equitable division. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 11; *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 37. "'[T]rial courts have broad discretion when creating an equitable division of property in a divorce proceeding.'" *Id.* at ¶ 39, quoting *Adams v. Chambers*, 82 Ohio App.3d 462, 612 N.E.2d 746 (12th Dist.1992), citing *Teeter v. Teeter*, 18 Ohio St.3d 76, 479 N.E.2d 890 (1985).

{¶ 27} It is wholly within the trial court's discretion to weigh the testimony, documentation, and credibility of witnesses. *Strauss at* ¶ 45, citing *Pruitt*, 8th Dist.

Cuyahoga No. 84335, 2005-Ohio-4424, ¶ 32, citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). A "trial judge has wide discretion when determining the admissibility of such evidence, and will not be disturbed on appeal absent a clear showing of an abuse of discretion*." Quellos v. Quellos*, 96 Ohio App.3d 31, 44, 643 N.E.2d 1173 (8th Dist.1994), citing *Renfro v. Black*, 52 Ohio St.3d 27, 32, 556 N.E.2d 150 (1990).

{¶ 28} The trial court is also free to ascertain and apply a statutorily compliant valuation protocol to achieve an equitable result. "When determining the value of marital assets, a trial court is not confined to the use of a particular valuation method, but can make its own determination as to valuation based on the evidence presented." *Chattree v. Chattree,* 2014-Ohio-489, 8 N.E.3d 390, ¶ 43 (8th Dist.), citing *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist.1995). R.C. 3105.171 does not dictate how the trial court makes its determination. *Strauss* at ¶ 36.

{¶ 29} This court's role is to "determine whether, based upon all of the relevant facts and circumstances," the record supports a "rational, evidentiary basis for assigning value to marital property." *Id.*, citing *James*; *McCoy v. McCoy*, 91 Ohio App.3d 570, 632 N.E.2d 1358 (8th Dist.1993).

### a. Asset Misclassification

{¶ 30} Appellant first protests the trial court's order that appellant pay to appellee $5,000 of a $10,000 check issued from the parties' joint account by appellant to his mother in November 2016, shortly before the parties separated.

Appellant argues that the $10,000 was mischaracterized as a marital asset but was, in fact, repayment of a $10,000 loan.

{¶ 31} Appellant testified that he is indebted to his parents for $284,000 and that the $10,000 was used to repay appellant's mother who loaned appellant the money to pay the parties' life insurance premiums. The trial court granted appellee's request for the return of $5,000 of those funds.

{¶ 32} Appellant bore the burden of proving, by a preponderance of the evidence, his position regarding the debt. *See Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, ¶ 110. The trial court determined that the $10,000 was marital property and allocated it accordingly. Once a court has reached a determination of whether property is marital or separate, the court's finding will only be reversed if the trial court has abused its discretion. *Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, at ¶ 48, citing *Larkey v. Larkey*, 8th Dist. Cuyahoga No. 74765, 1999 Ohio App. LEXIS 5174 (Nov. 4, 1999), citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981).

{¶ 33} We find that there is nothing in the record that supports that the trial court abused its discretion.

### b. Retirement Accounts

{¶ 34} Appellant also challenges the trial court's finding that appellee was entitled to a portion of three of appellant's retirement accounts. According to appellant, the accounts constituted separate property.

{¶ 35} Separate property is not marital property pursuant to R.C. 3105.171(A)(3)(a). Marital property does include:

> (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

> (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage.

R.C. 3105.171(A)(3)(b)(ii)-(iii).

{¶ 36} Separate property includes, in pertinent part:

> (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

> (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

R.C. 3105.171(A)(6)(a)(ii)-(iii).

{¶ 37} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The party seeking to establish an asset as his or her own separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to the separate property source." *Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, at ¶ 110, citing *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 11 (8th Dist.).

**{¶ 38}** The parties stipulated to the value of the retirement benefits. The Schwab Roth IRA 5566 was valued at $400,581.09 on September 30, 2017. Appellant opened the account on July 8, 2011, with a balance of $235,439.56. The trial court observed that "[n]o evidence was admitted regarding any tracing of said account to demonstrate [appellant's] separate property claim." Journal entry No. 102691179, p.3 (Feb. 23, 2018). The trial court determined that the balance as of July 8, 2011, qualified as appellant's separate property and the remainder was to be divided equally as marital property.

**{¶ 39}** The Schwab Roth IRA 5106 was valued at $46,524.43 on September 30, 2017. The trial court held that the account is "marital property and shall be divided equally as [appellant] failed to meet his burden to trace the alleged separate property component." *Id.* "The evidence introduced demonstrated the funds were deposited during the marriage." *Id.*

**{¶ 40}** The Wells Fargo IRA 1676 was valued at $62,858.49 on May 31, 2017. The trial court determined that the account "has both [a] separate and marital property component." *Id.* "The July 2011 balance of $40,200 is deemed to be [appellant's] separate property and the remainder of the account shall be divided equally." *Id.* "The testimony and evidence demonstrated the parties commingled funds in this account and [appellant] failed to trace the growth on this account." *Id.*

**{¶ 41}** We do not find that the trial court abused its discretion on this issue.

### c. Life Insurance

{¶ 42} The trial court determined that each party will own their life insurance policies free and clear of claims by the other. Appellant argues that the trial court failed to consider the cash surrender values of the life insurance policies when dividing the property. He offers that the proper consideration would result in a corresponding reduction against the child support and other obligations as determined by the trial court.

{¶ 43} The total coverage amount of appellant's five policies is approximately $5 million. The cash surrender value of the policies is $4,374. The total coverage amount of appellee's three policies is approximately $3 million while the cash surrender value is $18,276. As a result, appellant asserts that a $13,902 differential exists.

{¶ 44} The record reflects that the whole life insurance policies were companion policies purchased by the parties simultaneously, each in their own name. Appellee counters that the cash surrender value for appellant's policies were valued as of August 28, 2016, while appellee's value date was September 23, 2017, resulting in an apparent disparity. The comparison is, as termed by appellee, apples to oranges as far as a cash surrender value on a date certain. The record also supports appellee's argument that the Cleveland Clinic MetLife policy with the asserted cash value of $10,604 was issued by appellee's employer, acquired prior to the marriage and is in appellee's maiden name.

{¶ 45} A "trial court's valuation of marital assets will not be disturbed absent an abuse of discretion. *Saks v. Riga*, 8th Dist. Cuyahoga No. 101091, 2014-Ohio-4930, ¶ 16, citing *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183.

> An appellate court's duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value. *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (1995). A trial court must have a rational evidentiary basis for assigning value to marital property. *McCoy v. McCoy*, 91 Ohio App.3d 570, 576-578, 632 N.E.2d 1358 (1993).

*Janosek v. Janosek*, 8th Dist. Cuyahoga Nos. 86771, 86777, 2007-Ohio-68, ¶ 82.

{¶ 46} Based on the record, we cannot say that the trial court abused its discretion by effectively finding that the valuations were comparable when it determined that each party shall retain ownership of their respective policies free and clear of claims of the other.

### 3. The Trial Court Erred and Abused its Discretion in Ordering Appellant to Pay $30,000 Toward Appellee's Attorney Fees.

{¶ 47} Payment of attorney fees in divorce proceedings is governed by R.C. 3105.73. A court may award fees where the court deems the payment to be equitable under the circumstances. "[T]he court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). *See also Strauss,* 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, at ¶ 65 ("[t]he decision to award attorney fees rests in the sound discretion of the court * * *").

**{¶ 48}** The trial court determined that it was "reasonable and appropriate to award attorney fees" to appellee "based on the expertise and experience and given the complexities involved." Journal entry No. 102691179, p. 12-13 (Feb. 23, 2018). Appellee hired experts to conduct an income analysis for appellant's practice and businesses and a passive growth analysis for appellee's retirement accounts. Appellant did not hire any experts. The parties owned substantial assets including several real properties. The trial court's awarded approximately 25 percent of the fees incurred. The case was filed in December 2016 and proceeded until judgment in February 2018.

**{¶ 49}** The parties agreed to address the issue of attorney fees in the written closing arguments to the trial court. Appellant argues that the submission by appellees did not comply with R.C. 3105.73(A), Loc.R. 21 of the Cuyahoga County Common Pleas Division of Domestic Relations, and Ohio Rules of Professional Conduct Rule 1.5. Appellant argues that the hourly rates were unreasonable.

**{¶ 50}** R.C. 3105.73(A) provides:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

**{¶ 51}** This court recently addressed a similar allegation in *Rodgers v. Rodgers*, 8th Dist. Cuyahoga No. 105095, 2017-Ohio-7886, where a party argued that the other party's attorney fees were "excessive because he employed two

lawyers" and those lawyers "charged higher hourly rates than" the complaining party's lawyers. In *Rodgers*, this court explained:

> "Where the amount of an attorney's time and work is evident to the trier of fact, an award of attorney fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion." *Dotts v. Schaefer*, 5th Dist. Tuscarawas No. 2014 AP 06 0022, 2015-Ohio-782, ¶ 17. Indeed, domestic relations courts often rely on their own knowledge and experience to determine the reasonableness of attorney fees. *See e.g., Long v. Long*, 10th Dist. Franklin No. 11AP-510, 2012-Ohio-6254, ¶ 20 ("The trial court * * * is not required to hear [expert] testimony and may rely on its own knowledge and experience to determine the reasonableness of the amount claimed."); *Lundy v. Lundy*, 11th Dist. Trumbull No. 2012-T-0100, 2013-Ohio-3571, ¶ 55 (Trial court "may evaluate the work performed by an attorney in a domestic-relations action * * * [a]nd * * * may use its own knowledge and experience to determine the reasonableness [of] the amount claimed."); *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, 834 N.E.2d 15, ¶ 44 (10th Dist.) (same); *Gore v. Gore*, 2d Dist. Greene No. 09-CA-64, 2010-Ohio-3906, ¶ 39.

*Id.* at ¶ 70.

{¶ 52} Both parties had at least two attorneys at some point during the litigation. Reviewing the fee statement submissions, the total billed by counsel for the parties is essentially equal. The trial court considered the complexities of the case and there were multiple related challenges such as to the temporary support orders and motions to show cause. Finally, in addition to the trial court's broad discretion in the matter, the parties agreed to submit the fee issue via written closing arguments. Thus, appellant did not challenge the reasonableness of the fees at a hearing so "the matter is arguably waived on appeal in any event." *Long v. Long*, 10th Dist. Franklin No. 11AP-510, 2012-Ohio-6254, ¶ 20.

{¶ 53} The third assigned error is without merit.

### 4.  Temporary Support Order Arrearage

{¶ 54} The May 16, 2017 temporary support order was based on incomes of $440,331.57 for appellant and $201,000 for appellee.  The order became effective on March 3, 2017.  The order also provided for payment of $250 per month toward the existing arrearage.  The trial court also considered the living arrangements and related expenses.  The temporary support order was effective as of March 3, 2017.

{¶ 55} Each party was ordered to pay all debts incurred in their own name since the separation.  Appellant was also ordered to pay appellee's car payment and car insurance.  Appellant was ordered to pay $3,600 for monthly spousal support and $4,567.03 for monthly child support if providing health insurance or $4,396.88 plus $207.50 in cash medical support if not providing health insurance.  Appellant was also ordered to pay $200 toward the support arrearage pending establishing of a final judgment for a total of $8,367.03 per month.

{¶ 56} On October 5, 2017, after hearings on appellant's challenge to the original temporary support order, the magistrate issued a temporary support ruling pursuant to Civ.R. 75(N)(2) which governs challenges to temporary support orders.  Appellant offered that:  (1) the $66,000 attributed to child care should be excluded as unsubstantiated; (2) his income was inflated due to the trial court's failure to deduct certain business expenses; and (3) the parties have equal possession of the children so the status quo will be maintained only if neither party pays support.

{¶ 57} The trial court explained that it reached its decision to award temporary spousal support based on consideration of R.C. 3105.18(C)(1) which provides:

(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 58} The trial court also determined in the original order, and upheld in the subsequent ruling on the objections, that "it is appropriate and reasonable for" appellant "to pay spousal support to" appellee. Magistrate Order No. 98917313, p. 2 (May 16, 2017). "Although this is a relatively short term of marriage of five (5) years" the appellant "has a significantly higher income." *Id.* "Both parties maintained a higher than average standard of living." *Id.* Appellee "has significant monthly expenses." Spousal support was not granted in the final order.

{¶ 59} As the trial court acknowledged in the October 5, 2017, ruling,

"'There is no set formula under R.C. 3105.18 to guide courts to arrive at an appropriate amount of temporary support. The only explicit limitation in R.C. 3105.18(B) is that the award must be "reasonable." Courts are given discretion in deciding what is reasonable support because that determination is dependent on the unique facts and circumstances of each case.'" *Keating v. Keating*, 8th Dist. Cuyahoga No. 90611, 2008-Ohio-5345, ¶ 35, quoting *Cangemi v. Cangemi*, 8th Dist. Cuyahoga No. 86670, 2006-Ohio-2879, ¶ 15. Thus, this court will not reverse such determination absent a finding that the trial court abused its discretion. *Id.*

*Beck v. Beck*, 11th Dist. Lake No. 2016-L-054, 2017-Ohio-1106, ¶ 19.

**{¶ 60}** The trial court rejected appellant's arguments holding that the status quo cited by appellant is an inaccurate reflection of the parties' current circumstance and advised that there is no automatic offset for child support based on the amount of parenting time. The trial court also ruled,

> The [appellee's] argument that she has been solely bearing the costs of the child-care, nanny expenses (to the same nanny since 2014), the children's extracurricular activities and out-of-pocket medical expenses, which include neurologist appointments and a behavior-therapist for their child * * * who has special needs without contribution from [appellant] is persuasive.

Magistrate Order No. 100817707, p. 4-5 (Oct. 5, 2017.). It is in the "children's best interests that their care and support be allocated between both parents proportionately." *Id.* The trial court denied appellant's objections and the original support order remained in effect.

**{¶ 61}** In the trial court's final judgment of divorce, the" temporary support arrearage as of December 5, 2017 was listed at $21,745.63 to be repaid at $250 per month. Appellant claims entitlement to a credit in the amount of $6,692.48 due to the trial court's failure to apply direct in-kind payments against the temporary support arrearage.

**{¶ 62}** Appellant's primary focus is on the failure of appellee to produce sufficient evidence of the payments to the primary nanny or the nanny that cared for the children in the primary nanny's absence. Appellee produced check statements evidencing weekly withdrawals for the payments and appellant cross-examined appellee on the evidence at the trial. The parties agree that they hired the nanny in

2014 and that payments were made from the parties' joint account though appellant denies knowledge of how much the nanny was actually paid.

{¶ 63} Appellant admitted at trial that someone was apparently tending to the children and also confirmed that the parties employed nannies up until the time of the separation. In fact, both parties testified that they decided to employ a nanny due to their professional schedules when the oldest daughter was an infant. Appellee testified that the nanny worked an average of 45 to 60 hours per week.[3]

{¶ 64} In support of the arrearage claim, appellee produced an exhibit from the child support agency's portal evidencing payments by appellant. Appellee worked with counsel to compile an exhibit purportedly depicting the payments made by appellant and calculated the outstanding arrearage at $21,745.63.

{¶ 65} Both parties submitted their proposed findings on the issue of the temporary support arrearage. The trial court's adoption of the sum proposed by appellee in the amount of $21,745.63 indicates that the trial court found the evidence submitted by appellee to be more credible.

{¶ 66} As we stated under our analysis of child support under R.C. 3105.171 in the first assignment of error, the trial court has broad discretion to determine the appropriate amount of child support and to assess the needs and living standards of the children. *Cross,* 2015-Ohio-5255, 54 N.E.3d 756, at ¶ 46.

---

[3] The nanny resigned upon issuance of a subpoena by appellant in the case. The substitute nanny is filling in though appellee is hoping that the original nanny will return.

**{¶ 67}** Accordingly, we find that the trial court did not abuse its discretion. The fourth assigned error is overruled.

The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, P.J., and
LARRY A. JONES, SR., J., CONCUR