OPINION
{¶ 1} Appellant, Edmund Marchand ("Marchand"), appeals that portion of the trial court's divorce decree ordering spousal support payments in favor of appellee, Christine Marchand. We affirm the judgment of the common pleas court.
 {¶ 2} The parties were married in 1987 and had one child. The child turned eighteen years of age in August 2005.
 {¶ 3} Christine Marchand filed for divorce in 2003, and Marchand counterclaimed. A hearing was held before a magistrate in September 2004. Among other provisions, the magistrate's decision found that Christine Marchand should be awarded six years of spousal support. Commencing November 1, 2004, the amount of spousal support was set at $400 per month; and then at $900 per month after Marchand's child support obligation terminated. The magistrate recommended that child support be set at $516 per month, commencing November 2004. Since the daughter was projected to graduate from high school the following June and turn eighteen years of age two months later, the child support was projected to terminate in August 2005. The magistrate also found that the trial court should not retain jurisdiction over the amount or duration of spousal support.
 {¶ 4} Marchand filed six objections to the magistrate's decision. Five of the objections related to the award of spousal support. The trial court overruled five of the objections. In sustaining the other objection, the trial court ordered that the court retain jurisdiction over the amount and duration of spousal support. The final judgment of the trial court was entered on December 8, 2004.
 {¶ 5} In addition to overruling five of Marchand's six objections, the final judgment of the trial court granted the divorce, ordered Marchand to pay child support in the amount of $516 per month for the parties' minor daughter, and ordered that Marchand pay spousal support to Christine Marchand, as follows:
 {¶ 6} "That Mr. Marchand shall pay spousal support to Mrs. Marchand for a period of six years. His spousal support obligation shall be effective November 1, 2004. Mr. Marchand shall pay to Mrs. Marchand the sum of Four Hundred Dollars ($400) per month as and for spousal support until his child support obligation terminates. Upon terminate [sic] of his child support obligation, his spousal support obligation shall be increased to Nine Hundred Dollars ($900) per month for the remaining period of time.
 {¶ 7} "That the Court shall retain jurisdiction to modify spousal support as to both the amount and duration. Spousal support shall terminate upon the death of either party, remarriage of Mrs. Marchand, or her cohabitation with an unrelated male in a state equivalent to marriage." [Emphasis in original.]
 {¶ 8} The trial court also awarded the parties' residence to Marchand, because it was acquired by him prior to marriage and was, therefore, separate property. A brokerage account at Ameritrade was divided equally between the parties.
 {¶ 9} Marchand timely appealed the final judgment of the trial court, raising six assignments of error.
 {¶ 10} Four of the six assignments of error relate to Marchand's challenge to the spousal support award. They are as follows:
 {¶ 11} "[2.] The trial court erred and abused its discretion by finding that spousal support to Mrs. Marchand in the amount of $900.00 a month for six years was reasonable and appropriate based on Mrs. Marchand's testimony, which showed that she was voluntarily underemployed, and failed to impute income to Mrs. Marchand to reflect her full earning potential, and thus failing to fully and accurately take into account Mrs. Marchand's relative earning potential.
 {¶ 12} "[3.] The trial court erred and abused its discretion by finding that spousal support in the amount of $900.00 a month for six years was reasonable and appropriate based on the express and improper basis that Mrs. Marchand `has a need for spousal support.'
 {¶ 13} "[4.] The trial court erred and abused its discretion by finding that spousal support to Mrs. Marchand in the amount of $900.00 a month for six years was reasonable and appropriate based upon Mr. Marchand's gross income, and further erred where it failed to consider the fluctuations to Mr. Marchand's `commission' salary, via an analysis representing a three year average, thus reflecting a false and inflated disparity of income.
 {¶ 14} "[5.] The trial court erred and abused its discretion by finding that spousal support to Mrs. Marchand in the amount of $900.00 a month for six years was reasonable and appropriate based upon Mrs. Marchand's unsupported affidavit of income."
 {¶ 15} We review a trial court's decision regarding spousal support under an abuse of discretion standard of review.[1]
An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.[2]
 {¶ 16} R.C. 3105.18 expressly grants authority to the trial court to award spousal support, provided that the court has made a division of property pursuant to R.C. 3105.171.
 {¶ 17} An award of spousal support must be appropriate and reasonable.[3] The trial court must consider and be guided by fourteen factors in making an award of spousal support. However, the amount of spousal support awarded is discretionary with the court.[4] Those fourteen factors are as follows:
 {¶ 18} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 19} "(b) The relative earning abilities of the parties;
 {¶ 20} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 21} "(d) The retirement benefits of the parties;
 {¶ 22} "(e) The duration of the marriage;
 {¶ 23} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 24} "(g) The standard of living of the parties established during the marriage;
 {¶ 25} "(h) The relative extent of education of the parties;
 {¶ 26} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 27} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 28} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 29} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 30} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 31} "(n) Any other factor that the court expressly finds to be relevant and equitable."[5]
 {¶ 32} Our judgment is that the trial court did not abuse its discretion in awarding six years of spousal support, in staggered amounts, to Christine Marchand. Considering the foregoing factors and the record before the trial court, we find support for the judgment entry of the trial court and, specifically, for the award of spousal support.
 {¶ 33} Testimony at the hearing that bore on the issue of spousal support included testimony from Christine Marchand that the marriage was seventeen years in duration; that she was forty-five years of age at the time of the hearing; that her health was satisfactory except for an occasional flare-up from bone spurs in her neck; that she had a tenth-grade education and completed a GED equivalency exam; that her occupation for the previous ten years was cleaning houses; that she earned $15,332 from cleaning houses in 2003; that her schedule for cleaning houses was nearly full at about ten houses per week, but that she was attempting to add another day and one-half to her schedule; that she was expected to pay one-half of the household expenses during her marriage to Marchand, though her income was substantially less than his; that during the marriage she had to rely on overdraft protection to her checking account to pay her one-half of the household expenses; that she had filed bankruptcy to wipe out consumer debt that she had accumulated in supporting her son from a prior marriage, their daughter, and the household; and that she had no retirement income prospects, because she had not accumulated forty quarters to qualify for Social Security retirement income.
 {¶ 34} The following colloquy from her cross-examination by Marchand's counsel is illustrative of Christine Marchand's need for support in the future:
 {¶ 35} "[Question:] Now what is your plan for employment, that will provide you with enough income in the long term, to meet your expenses?
 {¶ 36} "[Answer:] I don't have one.
 {¶ 37} "[Question:] Are you going to go to classes and obtain some skill?
 {¶ 38} "[Answer:] I don't know what I'm going to do.
 {¶ 39} "* * *
 {¶ 40} "[Question:] So, it's your testimony that you have no plan to change how much you earn as a housekeeper, or change your skill level.
 {¶ 41} "[Answer:] Not at this point, no.
 {¶ 42} "[Question:] So how do you know you could not [do] better?
 {¶ 43} "[Answer:] Because I just know. I've been doing this for ten years.
 {¶ 44} "[Question:] But you're not making any money at it.
 {¶ 45} "[Answer:] Yes I am.
 {¶ 46} "[Question:] But not enough to live on.
 {¶ 47} "[Answer:] No, not enough to live on. That's correct."
 {¶ 48} As argued by her own counsel in the trial court, "[Christine Marchand] will need spousal support sufficient to cover monthly expenses as supplementation of her own earning ability, and she will need sufficient funds to pay for health insurance."
 {¶ 49} On the other hand, Marchand testified that he was forty-nine years old at the time of the hearing; that he was in relatively good health; that his occupation at a local tire store was projected to yield gross income of $51,308 in 2004; that he benefited from commissions and overtime pay; that he nearly completed one year of college; that, as a result of Christine Marchand's paying one-half of the household expenses, he was able to accumulate $37,000 in an investment account at Ameritrade, which was divided equally by the trial court as marital property; that he earns approximately $1,700 extra income in the winter from snow plowing; that there was no marital debt to be divided between the parties; that he has no retirement benefits set aside, except that he is fully qualified for Social Security retirement income; that he acquired the real property in which the parties had been living prior to marriage; and that the real property had no mortgage indebtedness.
 {¶ 50} With respect to Marchand's income, the magistrate found that Marchand earned gross income in excess of $48,000 in 2002, and in excess of $47,000 in 2003.
 {¶ 51} Moreover, in the child support computation form attached to the judgment entry of the trial court, the court found that Marchand's income accounted for seventy-one percent, and Christine Marchand's income accounted for twenty-nine percent, of the total household income.
 {¶ 52} Therefore, contrary to Marchand's assertions in his assignments of error, we find that the spousal support award is appropriate and reasonable under the circumstances of these two parties.
 {¶ 53} In his second assignment of error, Marchand argues that Christine Marchand was voluntarily underemployed. However, her testimony in this regard was that she tried to work for a retail employer in 2003 in order to get health insurance, but that the work was "overwhelming" and, as a result, she lost some of her housecleaning customers. She felt she could do better by resuming her housecleaning business and she was trying to regain her customers at the time of the divorce hearing. In this regard, she was attempting to generate more income by putting ads in the local paper in order to add another day and one-half to her housecleaning schedule. In fact, her work schedule was such that the magistrate found that "Mrs. Marchand will [not] have time and expense to acquire education, training, or job experience to be qualified to obtain appropriate employment."
 {¶ 54} Marchand is arguing that Christine Marchand's earning ability is greater than what she testified to, as typified by his response when she tried to discuss with Marchand the fact that she did not earn fifty percent of the household income:
 {¶ 55} "[Question:] Did you talk to him about the fact that you didn't earn fifty percent of the household income?
 {¶ 56} "[Answer:] Yes.
 {¶ 57} "[Question:] And what was his response?
 {¶ 58} "[Answer:] Get more work."
 {¶ 59} Marchand may have preferred that Christine Marchand work seven days a week. He argues that she is "lazy" and sought to be rewarded for her "indolence and voluntary inactivity." However, "[t]he proper focus when determining a person's earning ability is what the person could earn if he made the effort."[6] The trial court, based upon the evidence, did not accept the argument that Christine Marchand was voluntarily underemployed. We shall not disturb that finding.
 {¶ 60} In his third assignment of error, Marchand argues that Christine Marchand did not show a sufficient basis to demonstrate a need for spousal support. This argument, however, is not sustainable from the evidence and testimony at the hearing and is directly contrary to the finding of the magistrate, which we choose not to disturb.
 {¶ 61} In his fourth assignment of error, Marchand argues that the disparity in income was not so great when one considers the fluctuations in Marchand's income over a three-year period. However, the evidence showed that Marchand's income varied from $47,000 to $53,000 over a three-year period, depending on the amount of commissions and overtime pay he received. We believe that the disparity in income was manifest.
 {¶ 62} In his fifth assignment of error, Marchand argues that the trial court should not have relied on the unsupported affidavit of Christine Marchand to award spousal support. However, this overlooks the facts that she filed a tax return in 2003, which supports her income amount, and that she testified at the hearing to the amount alleged in her affidavit. Thus, the income asserted by her was not unsupported.
 {¶ 63} The second, third, fourth, and fifth assignments of error are without merit.
 {¶ 64} Marchand's first assignment of error is as follows:
 {¶ 65} "The trial court erred and abused its discretion by failing to conduct a full, thorough and independent analysis of the issues considered."
 {¶ 66} In this assignment of error, Marchand argues that the trial court merely "rubber stamped" the magistrate's decision in entering its judgment entry. He further argues that the trial court did not read the transcript of the hearing before the magistrate and that, had it read the transcript, it would have come a conclusion opposite to that of the magistrate, specifically that Christine Marchand was voluntarily underemployed. Thus, argues Marchand, the trial court did not engage in de novo review of the facts and conclusions stated in the magistrate's decision and, therefore, could not have performed the independent analysis required by Civ.R. 53(E)(4). We disagree.
 {¶ 67} Civ.R. 53(E)(4)(b) reads, in relevant part:
 {¶ 68} "(b) Disposition of objections. The court shall rule on any objections the court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter."
 {¶ 69} The Third Appellate District has construed this language to mean that a trial court is required "to conduct an independent review when a party files objections to the decision of the magistrate."[7]
 {¶ 70} The Second Appellate District has stated that an "independent review" must consist of a de novo determination that independently assesses the facts and conclusions contained in the magistrate's decision:
 {¶ 71} "We have previously stressed that a `trial court must undertake the equivalent of a "de novo" determination in light of any filed objections, when independently assessing facts and conclusions contained in a magistrate's [decision].'"[8]
 {¶ 72} Further, this court has said, with regard to the trial court indicating its basis for awarding spousal support, that "`"it is required that an entry awarding spousal support provide some illumination of the facts and reasoning underlying the judgment."'"[9]
 {¶ 73} We have examined the judgment entry of the trial court and conclude that the trial court did provide a sufficient "illumination of the facts and reasoning underlying [its] judgment," and that it did independently review the facts and conclusions contained in the magistrate's decision. We can come to no other conclusion when we consider that the trial court's judgment entry recites that it reviewed the magistrate's decision and the objections filed in opposition thereto; that it sustained one of the objections while overruling the other five objections; that it rendered "an independent analysis of the issues, findings of fact, and the application of the rules thereto" prior to adopting the magistrate's decision as modified; and that it substantially modified and edited the text of the magistrate's decision in order to prepare its judgment entry.
 {¶ 74} Marchand's argument is predicated upon an assumption that the trial court did not review the transcript of the magistrate's hearing and that the testimony "clearly establishes" that Christine Marchand was voluntarily underemployed. Our review of the record, including the transcript, comes to the opposite conclusion, that the magistrate correctly found that Christine Marchand was not voluntarily underemployed. Based upon the recitals in the trial court's judgment entry, we conclude that it arrived at the same conclusion when it performed its independent review of the facts and conclusions contained in the magistrate's decision.
 {¶ 75} The first assignment of error is without merit.
 {¶ 76} Marchand's sixth assignment of error is as follows:
 {¶ 77} "The trial court erred and abused its discretion by failing to include in his decision the $900.00 credit due and owing to Mr. Marchand, which he is entitled to receive on his child support obligation, and further erred by stating that Mr. Marchand's arrearage, which there are none, be carried forward."
 {¶ 78} The testimony at the hearing does not support Marchand's position that he is due a credit on his child support obligation, and that he had no child support arrearage. The testimony on these points was as follows:
 {¶ 79} "[Magistrate:] It is my understanding that there is agreement as to the amount of credit that Mr. Marchand should receive on his child support obligation, is that correct?
 {¶ 80} "[Appellant's counsel:] Yes. He should receive credit for $900.
 {¶ 81} "[Appellee's counsel:] That's correct.
 {¶ 82} "[Magistrate:] What does that do with the arrearage? Does anybody know?
 {¶ 83} "[Appellee's counsel:] I've got the printout right here from just the other day, in fact from, I think, Friday[.] * * * It says that he owes $1,293.29, but that's because they're obligated him for the entire month of September. So it may just wipe it out."
 {¶ 84} From this exchange, one can conclude that Marchand was entitled to a $900 credit for child support overpayments, but that has to be measured against the record of an arrearage for $1,293.29. Counsel for appellee conjectured that the credit due to him might nearly balance out the arrearage as shown by the record, but Marchand's assertion that he is owed a credit unfettered by an arrearage belies the record as per the transcript of the hearing. Based on the record, we cannot conclude that Marchand is owed a credit for overpaid child support payments or that he had no arrearage.
 {¶ 85} Marchand's sixth assignment of error is without merit.
 {¶ 86} The judgment of the trial court is affirmed.
Grendell, J., O'Toole, J., concur.
[1] Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390, citingBooth v. Booth (1989), 44 Ohio St.3d 142, 144.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[3] R.C. 3105.18(C)(1).
[4] Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130-131.
[5] R.C. 3105.18(C)(1).
[6] Beekman v. Beekman (Aug. 15, 1991), 10th Dist. No. 90AP-780, 1991 WL 160062, at *6. See, also, Haninger v.Haninger (1982), 8 Ohio App.3d 286, 288.
[7] Reese v. Reese, 3d Dist. No. 14-03-42, 2004-Ohio-1395, at ¶ 11.
[8] (Emphasis in original.) Garber v. Garber, 2d Dist. No. 2004-CA-8, 2005-Ohio-908, at ¶ 9, quoting Snyder v. Snyder
(Nov. 2, 2001), 2d Dist. No. 2001-CA-18, 2001 Ohio App. LEXIS 4846, at *2-3.
[9] (Citations omitted.) Bandish v. Bandish, 11th Dist. No. 2002-G-2489, 2004-Ohio-3544, at ¶ 18.