[Cite as *Haun v. Haun*, 2024-Ohio-1526.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| SHARLA R. HAUN, | **CASE NO. 2023-P-0049** |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| GREG R. HAUN, | |
| Defendant-Appellee. | Trial Court No. 2013 DR 00448 |

**O P I N I O N**

Decided: April 22, 2024
Judgment: Affirmed in part, reversed in part, and remanded

*Sharla R. Haun*, pro se, 439 Glacierview Drive, Youngstown, OH 44509 (Plaintiff-Appellant).

*Joseph G. Stafford* and *Nicole A. Cruz*, Stafford Law Co., L.P.A., North Point Tower, 1001 Lakeside Avenue, Suite 1300, Cleveland, OH 44114 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1}    Plaintiff-appellant, Sharla R. Haun, appeals from the Portage County Court of Common Pleas, Domestic Relations Division's, denial of her motions to modify spousal support, child support, and the denial of her request for attorney fees in relation to contempt.  For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

{¶2}    The parties were married in 1999 and had two children together, born in 2001 and 2003.  Sharla filed a complaint for divorce in 2013.  The final divorce decree,

which included the parties' separation and settlement agreement, and shared parenting plan, was issued on November 3, 2014.

{¶3} On February 12, 2016, Sharla filed a Post Decree Motion to Modify Child Support and Spousal Support, due to "a substantial change in circumstances." This was opposed by Greg.

{¶4} Sharla filed a Motion for Contempt on August 23, 2017, in part alleging that Greg failed to comply with the divorce decree/settlement agreement in relation to the children's 529 college savings accounts.

{¶5} Hearings were held on the motions in April and October of 2017 and October 2018. Therein, the parties provided testimony and evidence on their living arrangements and expenses relating to the children, as well as their incomes.

{¶6} On November 28, 2018, the trial court issued a Judgment Entry in which it denied Sharla's motions. Sharla appealed on December 21, 2018. While that appeal was pending, the trial court issued May 2, 2019 Findings of Fact and Conclusions of Law.

{¶7} On appeal, this court reversed the lower court on several grounds. First, as to the award of child support, we held that the lower court failed to follow the requirements of R.C. 3119.79 and ordered that, on remand, it must modify the support to comply with the child support worksheet unless it determines that the amount would be unjust or not in the best interest of the children. *Haun v. Haun*, 11th Dist. Portage No. 2018-P-0108, 2019-Ohio-5408, ¶ 14. It also found that the court erred in basing its child support award on a finding relating to Sharla's need for support rather than the children's needs and standard of living. *Id.* at ¶ 22-24. As to the award of spousal support, this court held that "the trial court here erred by relying solely on [Sharla's] need for spousal support," did not

2

reference other necessary factors, and this court could not "ascertain whether it considered them." We remanded for the court to "consider the requisite statutory factors." *Id.* at ¶ 51-52. Finally, as to the issue of contempt, we held that the trial court erred in considering whether the alleged contempt was "willful" and that the undisputed evidence showed the children's college savings accounts were underfunded. *Id.* at ¶ 60 and 64. We held that the trial court "shall hold Greg in contempt" for failing to adequately fund the accounts. *Id.* at ¶ 66. In response to a motion for reconsideration, this court recognized its opinion did not address the May 2, 2019 findings of fact and conclusions of law, but observed that they were not included on the certified copy of the docket before this court.

{¶8} The lower court held a hearing on remand on December 16, 2020. Following that hearing, a new judge took over the case and the continuation of the hearing was held on June 12, 2023.

{¶9} At the commencement of the December 16 hearing, the court inquired whether the parties objected to its consideration of the prior hearing transcripts. Sharla's counsel indicated that he believed the court was required to consider this testimony and had no objection to consideration of previous exhibits. Greg's counsel also indicated in his opening statement that he had moved for the court to "adopt the prior testimony" to avoid a "rehash" of testimony.

{¶10} Greg testified that he is a physician for Cleveland Clinic who works in both the United States and Saudi Arabia. Before COVID, he would alternate his schedule, with one month spent in the Middle East and two months in the U.S. During COVID, he spent four consecutive months in the U.S. and two months in the Middle East. During both time periods, he spent four months overseas and eight months at home each year.

3

During February 2020, at the time COVID began, he was unable to come home from the Middle East for a period until June of 2020. Greg indicated that at the time the separation agreement was signed, he did not have the position involving international travel, which began in November 2015. His W-2 and tax information demonstrated that his 2014 wages were $343,000, with a significant increase beginning in 2016. His 2019 wages were $790,000.

{¶11} Greg testified that since his international schedule began in 2016, his children lived with him when he is in the U.S., approximately eight months out of the year. His son began college in 2019 and lives in his own apartment during the school year. According to Greg, his daughter is with him "99 percent" of the time when he is home. At the time of the divorce, the Hauns lived in a 2,500 square foot condo with three bedrooms and Greg now lives in a 4,000 square foot house with four bedrooms.

{¶12} Greg testified that he pays car payments and insurance for his son's and daughter's vehicles. He also pays for their cell phones and provides them an allowance of approximately $400 per month. He paid $3,000 annually for the daughter's soccer lessons. He has gone on several vacations with his children since the divorce but has not travelled with them in the past few years. As to the children's 529 college accounts, Greg testified "I contribute significantly more money than what the Divorce Decree said I should contribute."

{¶13} Aria Haun, who was 17 years old at the time of her testimony, testified that she generally lives with her father eight months out of the year, when he is in the United States. She testified that he pays for her car, gas, college applications, soccer, senior pictures, medical and dental bills, and haircuts. He puts money in her debit account if

4

she needs something. She testified that her mother's apartment is smaller than their house and she did not have her own room there until her brother moved out.

{¶14} Sorenson, the Hauns' son, was in college at the time of his testimony. Prior to his graduation in May 2019, he lived with his father when he was home. He did not recall the exact schedule but believed he would go for a month at a time. He indicated that his father paid "mostly" for his expenses when he was living with his parents and provides gas money and pays his current rent. He indicated that he had gone on a few trips with his father prior to 2019.

{¶15} On the second day of testimony, June 12, 2023, the parties agreed that the new judge should consider the testimony from the 2020 hearing.

{¶16} On cross-examination, Greg testified that while he was in medical school, Sharla worked as a lawyer and he did not have an income. After he became a doctor, they became members of a country club and went on trips to various locations together. In April 2013, they purchased a new house.

{¶17} Sharla testified that she made various payments for the children's expenses, including for their orthodontist, orchestra, and school fees. She also gave the children money when they requested it. She testified that her "apartment was quite comfortable" with a pool and workout facility.

{¶18} On June 14, 2023, the court issued a Judgment Entry, dismissing Sharla's motion for spousal support and child support, denying her motion for attorney fees, and finding that Greg had demonstrated that he purged the contempt by overfunding the children's 529 accounts in the amount of $84,107. In its findings of fact and conclusions of law, it noted that the May 2, 2019 findings of fact and conclusions of law "remain before

5

this Court and constitute the law of the case." It noted, in pertinent part, that those findings indicate Sharla's monthly expenses had not increased after the divorce decree, she failed to demonstrate how the current support order did not address the needs of the children and their standard of living and that the award sought exceeded their needs, that Greg had the children in his possession 225 days in 2017 and 230 days in 2016, that Sharla has an earning ability beyond that imputed to her in the divorce decree, and she failed to submit evidence to support an increase in spousal support. In relation to the testimony and evidence presented on remand, the court found Sharla's testimony was "disorganized, irrelevant, and lacked credibility" and that Greg was "cooperative and testified openly and honestly" and that his testimony was "credible and reliable." Other findings will be addressed in the relevant assignments of error.

{¶19} Sharla timely appeals and raises the following assignments of error.

{¶20} "[1.] The Post-Remand Trial Court failed to follow the directives outlined by the 11th District Court of Appeals and relied on erroneous findings of fact in denying Sharla's Motion to Modify Child Support.

{¶21} "[2.] The Trial Court abused its discretion in denying the Motion to Modify the Spousal Support Award based upon findings of fact from a 5/2/2019 Judgment Entry which was written outside the Trial Court's jurisdiction while the case was under appeal to the Eleventh District Court of Appeals. The Post-Remand Trial Court also misapplied Ohio's governing spousal support statute and case law.

{¶22} "[3.] The Trial Court abused its discretio[n] purging Greg's Contempt based on evidence not submitted at a hearing. The Trial Court determined Sharla provided no evidence of Attorney Fees."

6

Case No. 2023-P-0049

**{¶23}** In her first assignment of error, Sharla raises various arguments asserting that the trial court's consideration of her motion to modify child support was flawed and constituted an abuse of discretion.

**{¶24}** "Absent an abuse of discretion, a trial court's determination regarding child support obligations will not be disturbed on appeal." *Haun*, 2019-Ohio-5408, at ¶ 7, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997). "[T]he term 'abuse of discretion' is one of art, essentially connoting judgment exercised by a court which neither comports with reason, nor the record." (Citation omitted.) *Shorts v. Shorts*, 11th Dist. Portage No. 2007-P-0067, 2008-Ohio-2317, ¶ 13. An abuse of discretion is the court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary (8 Ed.2004) 11.

**{¶25}** This court reversed and remanded the trial court's denial of Sharla's motion to modify child support on the grounds that the court failed to make a proper finding that the amounts calculated under the child support schedule were unjust and not in the best interest of the children and because it fashioned the award based on Sharla's needs rather than the children's. On remand, the lower court found it was incapable of calculating child support under the worksheet because Sharla failed to present evidence verifying her income. Nonetheless, it proceeded to conduct an analysis of the justification for a support award and made a finding that the minimum support amount cited by this court in the prior appeal, $1,830.92 per month, "would be unjust or inappropriate and would not be in the best interest of the children." It based this conclusion on the "extensive time the children are in Greg's possession," his obligation to fund their 529 accounts, and

7

his additional financial contributions to their expenses. It addressed the impact of child support on Sharla as well as the children. Thus, the court addressed the concerns upon which this matter was remanded.

{¶26} Sharla raises several arguments that she asserts justify reversal of the lower court's order. First, she contends that the court erred in finding she failed to provide records relating to her income or to submit a properly authenticated financial affidavit. She did provide paystubs and tax return documents from 2016 and 2017 in the initial hearings on this matter. Similarly, she testified regarding her affidavit of income and expenses at the prior proceedings and it was introduced as an exhibit.

{¶27} The trial court declined to consider past evidence from the initial hearings, stating that Sharla did not provide evidence of her income at the "new trial." However, at the commencement of the 2020 hearing on remand, Greg's counsel moved to adopt the prior testimony from the 2017 hearings. The court inquired "do you have any problem using these transcripts if I need to?" to which Sharla's counsel responded he had no objection, stating: "I think my understanding of the law is that you're required to – take into consideration what was previously offered into evidence." Sharla's counsel further indicated he had no objection to the previously admitted exhibits, and the court indicated "I'm sure they're in the files." Greg's counsel indicated no objection to consideration of the prior exhibits. The proceedings continued at a 2023 hearing, where Greg's counsel further indicated that the court should consider the testimony presented at the 2020 hearing, to which Sharla did not object. To later decide not to consider transcripts or evidence from any of the prior proceedings given these statements made on the record is unfair to Sharla, since it was reasonable to depend upon the agreement that it was

8

unnecessary to duplicate evidence already presented. This court did not specifically require that those issues warranting remand necessitated a new trial or order that the court could not consider the evidence already before it. Rather, we remanded for the court to "undertake the required [child support] calculation and find a substantial change in circumstances" and "modify the amount of child support" unless such amount would be unjust; "consider the requisite statutory factors when addressing whether the existing spousal support order should be modified"; and to "hold Greg in contempt." *Haun* at ¶ 14, 52, and 66. Our orders related to making appropriate findings rather than to the need for new evidence to be presented.

{¶28} Nonetheless, even presuming the lower court erred in finding Sharla had not properly demonstrated her income, it proceeded to an analysis of the merits of whether child support in the amount of "at least $1,830.93" was appropriate, the amount this court stated was the minimum that could be awarded unless a finding to the contrary was made. Thus, the finding regarding the admission of Sharla's financial records did not preclude the court from considering whether a modification of child support was appropriate under the facts and circumstances of this case.

{¶29} R.C. 3119.04(B), effective until March 27, 2019, and in effect at the time the motion to modify child support was filed, states that "[i]f the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is

9

no less than the obligation that would have been computed under the basic child support schedule * * *, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." This court observed in *Haun* that "[t]he appropriate standard for the amount of child support is 'that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued.'" *Id.* at ¶ 18, citing *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, 796 N.E.2d 541, ¶ 24 (9th Dist.).

{¶30} R.C. 3119.04(B) "'neither contains nor references any factors to guide the court's determination in setting the amount of child support,'" so the determination of how much child support an obligor must pay is left to the discretion of the trial court. (Citations omitted.) *J.R. v K.R.,* 8th Dist. Cuyahoga No. 106978, 2019-Ohio-1765, ¶ 14. As this court has held, a "domestic court possesses considerable discretion in setting a child support order when the parents' combined income is above $150,000." (Citation omitted.) *Janecek v. Marshall*, 11th Dist. Lake No. 2010-L-059, 2011-Ohio-2994, ¶ 41.

{¶31} The lower court's finding that an increase in child support was unwarranted was based upon several findings, including the time the children are in Greg's possession and his additional financial contributions to their expenses. The court recognized that the children had their needs met by the significant expenditures made by Greg, including his payment of their car expenses, school expenses, and allowances and debit accounts toward their personal needs. This offset the need to increase support, particularly where there was evidence that the children resided with him for the majority of the year.

{¶32} Sharla argues that the court erred in its findings relating to Greg's custody of the children. She contends it misstated the children's testimony, incorrectly finding that

Case No. 2023-P-0049

Sorenson testified they stayed with their father eight months a year. Aria testified that she lived with Greg "usually eight months out of the year." Sorenson indicated that when his dad was home, he stayed with him, and when his mother was home, he stayed with her. He believed, but was uncertain, that his father was out of the country for one month at a time, for a total of five months a year. The trial court did incorrectly conclude "each of the children" testified they stayed with Greg for eight months out of the year, when Sorenson did not provide this exact testimony. Nonetheless, this error in characterizing his testimony does not invalidate the lower court's conclusion that the children lived with Greg eight months out of the year, as both Greg and Aria provided such testimony and Sorenson was uncertain but gave testimony that placed the time period close to that provided by his father and sister. Sharla argues that her personal calendars indicated the children were not always in Greg's care during the months he was in the United States. However, Greg testified to the contrary. The court ultimately found that Greg was a credible witness while Sharla was not. "[T]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact[,] and an appellate court may not substitute its own judgment for that of the finder of fact." *Allen v. Allen*, 2022-Ohio-3198, 196 N.E.3d 368, ¶ 86 (11th Dist.), citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶33} Sharla also argues that calling the children to testify demonstrates "Greg does not know what is in the best interests of the children." She does not cite any legal authority for the proposition that it was improper for the children, one of which was an adult, to testify. Whether or not this is demonstrative of Greg's knowledge regarding their best interests is not relevant as to whether an increased child support order is in their

11

interests.

{¶34} Finally, Sharla argues that the court erred in finding that she failed to demonstrate the needs of the children were not met by the support order, emphasizing that the existing order of approximately $1,000 a month only meets two-thirds of her rent expense. Apart from the fact that Sharla would have some rent expense even if the children did not live with her, it also must be recognized that the children live with her only four months of the year. Further, there was significant testimony from both Greg and the children that he paid many of their expenses, including car payments, gas, insurance, extracurricular activities, and provided money when they requested it. There was a lack of testimony at any of the hearings to show that their needs were not being met, except that Sharla had difficulty affording to take them on vacations. She did testify she took them on a trip to visit family and there was testimony that they were able to travel with Greg. Sharla also testified to a significant amount of money she had been able to save since the divorce, between the sale of the house and from the spousal support award. While this money is not for the support of the children, the court was within its discretion to question Sharla's assertions regarding whether additional child support was needed to meet the children's needs.

{¶35} Further, as to Sharla's assertions regarding the change in the children's lifestyle, for the majority of the year, they live in a home larger than the one they did at the time of the divorce and they both have relatively new vehicles. They are provided money for personal expenses such as haircuts and eating out. According to Sharla, her apartment was "quite comfortable" and afforded the children a pool and workout facility. It has been held that "a trial court should tread carefully when determining to award a

12

child support amount that is greater than that necessary to cover the current needs of the children; awarding a higher amount in this situation could encroach on [the other parent's] own common law duty to support the children." (Citation omitted.) *Pearlstein v. Pearlstein*, 11th Dist. Geauga No. 2008-G-2837, 2009-Ohio-2191, ¶ 67. Given the support cited for the trial court's ruling, and that it made the necessary statutory findings to support its decision not to modify support, we find no abuse of discretion. *See Crandall v. Crandall,* 11th Dist. Geauga No. 2019-G-0202, 2020-Ohio-625, ¶ 80-82 (where the father pays for significant expenses of the children, including extracurricular activities, and the mother did not demonstrate an increase was required to meet the children's needs or standard of living, the court did not err in denying increased support).

**{¶36}** The first assignment of error is without merit.

**{¶37}** In her second assignment of error, Sharla argues that the trial court erred in denying her motion for spousal support because it failed to consider factors under R.C. 3105.18(C)(1) which had substantially changed or which were material to modification of spousal support and failed to consider testimony from the 2017 and 2018 hearings to conduct a spousal support analysis.

**{¶38}** "We review a trial court's decision regarding spousal support under an abuse of discretion standard of review." *Marchand v. Marchand*, 11th Dist. Geauga No. 2005-G-2610, 2006-Ohio-3080, ¶ 15.

**{¶39}** As this court stated in *Haun*, "R.C. 3105.18(C)(1) lists factors a court is required to consider upon assessing whether the spousal support award remains appropriate and reasonable." *Haun*, 2019-Ohio-5408, at ¶ 32. These factors include, inter alia: the income of the parties; the earning abilities of the parties; the ages and

13

physical, mental, and emotional conditions of the parties; the retirement benefits of the parties; the duration of the marriage; the standard of living established during the marriage; the education of the parties; the parties' assets and liabilities; the contribution of the parties to each other's education; the tax consequences of an award of support; lost income capacity resulting from marital responsibilities; and any other factor the court finds relevant. R.C. 3105.18(C)(1)(a)-(n). "[A]lthough a court must consider all the applicable factors and set forth the basis of its decision to allow appellate review, a court is *not* required to restate the applicable factors under R.C. 3105.18(C)(1) that are unchanged since the original spousal support order was issued." *Haun* at ¶ 48, citing *Kucmanic v. Kucmanic*, 119 Ohio App.3d 609, 613, 695 N.E.2d 1205 (8th Dist.1997).

{¶40} In *Haun*, this court reversed the denial of the motion to modify spousal support because the trial court relied on Sharla's need for support and this court could not ascertain whether the court considered the mandatory factors in R.C. 3105.18(C). 2019-Ohio-5408, at ¶ 51-52. On remand, the trial court found that Sharla failed to comply with the requirements of Loc.R. 27.1 as grounds for dismissing her support motion. It further found that she failed to present evidence as to her age and health, education and training, employment history and earning potential, and her income and expenses, thereby preventing the court from being able to properly weigh the factors under R.C. 3105.18(C).

{¶41} Portage County Common Pleas Court, Domestic Relations Division, Local Rule 27.1, cited by the trial court, requires that a party filing to modify a spousal support order must provide required affidavits in Loc.R. 9, i.e., financial disclosure affidavits. As indicated above, at the initial hearing, Sharla presented as an exhibit her affidavit of

14

income and expenses. She also presented tax return information and a current pay stub. She testified about her affidavit and the expenses listed therein. Her failure to resubmit this information for a second time should not preclude further consideration of her motion to modify. This is particularly true where this court did not require further evidence to be gathered on remand and did not indicate that additional facts were necessary to determine the matter of spousal support.

{¶42} Further, the trial court held that Sharla failed to present testimony or evidence regarding her age and health, education and training, employment history and earning potential, and her income and expenses. However, in the 2017 hearings, she provided testimony regarding her age and health; her income since the divorce; her past education in completing law school; her present attendance of a master's degree program; her expenses for tuition, rent, and her vehicle; her most recent employment as an attorney; and the amount of money in her savings account. The trial court's decision not to consider these factors did not comply with this court's instructions on remand. As noted above, in the *Haun* decision, we did not require that new evidence be presented upon remand. Rather, we remanded "for the court to consider the requisite statutory factors when addressing whether the existing spousal support order should be modified." *Haun* at ¶ 52. This could have been accomplished by the court considering the evidence already presented, as the issue was not a lack of evidence but the trial court's failure to consider the statutory factors. Furthermore, at the commencement of the new trial held after remand, the parties agreed that the trial court could consider past testimony and the court had initially indicated its intent to consider past testimony and evidence. Requiring Sharla to present additional evidence when the parties had already agreed that prior

15

evidence could be utilized results in an unfair outcome.

{¶43} For these reasons, we reverse the court's judgment as to spousal support and remand with instructions to consider the requisite statutory factors when addressing whether the existing spousal support order should be modified, taking into account all evidence and testimony presented by Sharla and Greg in the past hearings on the motion to modify spousal support.

{¶44} The second assignment of error is with merit.

{¶45} In her third assignment of error, Sharla argues that the trial court erred in finding that Greg purged the contempt since the only evidence of this was presented through a document filed with a motion rather than produced at the hearing. Further, she argues that she should have been awarded attorney fees related to the contempt.

{¶46} "We review contempt orders for an abuse of discretion." *Haun*, 2019-Ohio-5408, at ¶ 56.

{¶47} In the prior appeal, this court held that there was undisputed evidence presented by Sharla which demonstrated Greg failed to fully fund the children's 529 college savings account. *Id.* at ¶ 64. We ordered that, on remand, "the trial court shall hold Greg in contempt of court" and that it "has discretion in awarding attorney fees, if any, in connection with this contempt finding." *Id.* at ¶ 66. We did not address the issue of purging the contempt.

{¶48} "One charged and found guilty of civil contempt must be allowed to purge him/herself of the contempt by showing compliance with the court's order he/she is charged with violating." *In re Guardianship of Hards*, 11th Dist. Lake No. 2007-L-150, 2009-Ohio-1002, ¶ 23. While this court held that Greg must be found to have committed

16

contempt, this did not preclude the court from allowing Greg to purge such contempt. The lower court made such a finding, based upon statements from the accounts which showed their yearly balances.

{¶49} On June 8, 2022, Greg filed an Updated Notice of Overpayment of 529 Account Contributions. In this notice, he argued that he had complied with all of the terms of the divorce decree concerning the funding of the children's 529 accounts and that his contributions exceeded the court ordered payments. Attached were 529 statements for both children from 2014 through 2020.

{¶50} Sharla does not refute that the foregoing shows Greg made the required payments but argues that these were not properly admitted as evidence at the remand hearings or authenticated. In support of her contention, Sharla observes that the trial court applied the logic that "pleadings and motions filed with the court are not evidence," *see Felton v. Felton*, 79 Ohio St.3d 34, 43, 679 N.E.2d 672 (1997), in relation to her affidavit of income and the same should be applied here. It has been held that "[i]n making its decision following trial, the trial court may only consider the evidence * * * admitted at trial. Other evidence in the record but not admitted at trial may not be considered." (Citation omitted.) *Paldino v. Johnson*, 11th Dist. Trumbull No. 2022-T-0116, 2023-Ohio-1947, ¶ 12, fn. 2.

{¶51} In various circumstances, courts have held that evidence not admitted as exhibits, but included as attachments in motions or otherwise not authenticated, is admissible where the opposing party fails to object to its admission. *See State ex rel. Chuvalas v. Tompkins*, 83 Ohio St.3d 171, 173-174, 699 N.E.2d 58 (1998) (objection to affidavits attached to a brief were waived when a party did not move to strike them or

17

Case No. 2023-P-0049

otherwise raise grounds challenging their impropriety); *Abbott v. Sears, Roebuck & Co.*, 11th Dist. Trumbull No. 2003-T-0085, 2004-Ohio-5106, ¶ 15 ("[g]enerally, a party's failure to object to the propriety of evidence submitted in support of a motion for summary judgment constitutes a waiver of any alleged error in the consideration of such evidence"); *State ex rel. Noble v. Vettel*, 11th Dist. Ashtabula No. 2004-A-0079, 2005-Ohio-692, ¶ 4 (where relator had "ample opportunity to challenge" assertions made in a motion which had attached a judgment entry but failed to do so, the authenticity of the document was not contested). Here, a hearing was held on the issues before the court on remand, which included the matter of contempt and attorney fees relating to that contempt. Sharla had the opportunity to raise this issue, either through a motion seeking to strike the filings, or through questioning of Greg, but did not do so. Thus, we do not find error in the court's consideration of these materials in determining whether contempt had been purged.

{¶52} Sharla also argues that the lower court erred in failing to award attorney's fees. When remanding this matter, this court recognized the trial court has the discretion to award attorney's fees against a party found guilty of civil contempt. *Haun* at ¶ 66.

{¶53} The lower court determined that attorney fees were not appropriate here, finding that there was a lack of evidence presented by Sharla to justify such an award. "Awards of attorney fees or sanctions as costs are permitted if those fees have a clear nexus with the contemnors' behavior." *Hards*, 2009-Ohio-1002, at ¶ 56, citing *State ex rel. Fraternal Order of Police, Captain John C. Post Lodge No. 44 v. Dayton*, 49 Ohio St.2d 219, 229-230, 361 N.E.2d 428 (1977). In awarding attorney fees, a court considers various factors in determining their reasonableness, including inter alia, time and labor expended, the fee customarily charged in the locality, the results obtained, the nature of

18

the relationship, and the experience of the lawyers. *Id.* at ¶ 56-64, citing Sup.R. 71(A).

{¶54} While the court emphasized the lack of evidence presented at the hearing on remand relating to attorney fees, as noted above, the parties agreed that the court could consider evidence from the prior hearing. At the initial hearing on this matter, itemized billing records from Sharla's counsel were presented, which included tasks relating to the contempt motions.

{¶55} Even presuming these should have been considered, however, we do not find reversal is warranted. As recognized by the trial court, there was a lack of testimony to establish the reasonableness of the fees and the specific tasks performed by counsel in relation to the contempt finding at issue. There were multiple issues relating to contempt raised through those motions and litigation, including claims for contempt for Greg's failure to provide Sharla with online access to the children's 529 accounts and to designate the children as beneficiaries of life insurance policies, both of which were unsuccessful. There was a lack of testimony to establish what portion of fees would be reasonable for the contempt violation on which Sharla prevailed. Of note, this court recognized that although Sharla "argued that Greg failed to provide her with online access to their children's 529 college savings accounts" Sharla's motion did "*not* allege, as a basis for contempt, that Greg was in violation of the decree based on his *failure to fund* the 529 accounts." *Haun* at ¶ 64. The trial court similarly noted on remand, in ruling on the issue of attorney fees, that Sharla did not specifically address the fact that accounts were underfunded in her motion. Since she did not raise this issue in her motion for contempt, it is difficult to determine the extent to which she expended attorney's fees on the matter on which she prevailed. For these reasons, we do not find the court abused

19

its discretion by denying an award of attorney fees.

{¶56} The third assignment of error is without merit.

{¶57} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the parties equally.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.